IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* ) <br> DEBORAH RADKE, AS RELATOR ) <br> UNDER THE FALSE CLAIMS ACT, ) <br> ) <br> Relator/Plaintiff, ) <br> v. ) <br> ) <br> SINHA CLINIC CORP., BABER AND ) <br> ASSOCIATES, LLC, SHOBA SINHA, M.D., ) <br> and SABRINA YOUNG, PH.D., PSY.D., ) <br> ) <br> Defendants. ) | Case No. 1:12-cv-06238 <br><br> Honorable Sharon Johnson Coleman |

**DEFENDANT BABER'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Defendant, Riaz Baber, M.D., S.C. ("Baber"), incorrectly sued as Baber and Associates, LLC, by and through his attorneys, David J. Tecson and Ryan A. Haas of Chuhak & Tecson, P.C., files this Memorandum of Law in Support of Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and in support hereof, states as follows:

**I.     INTRODUCTION**

The Complaint filed by Deborah Radke ("Radke" or "Plaintiff") against Riaz Baber, M.D., S.C. ("Baber") suffers from multiple flaws which require dismissal with prejudice pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The Complaint and Exhibits comprise 355 pages of allegations (Doc. #2). A small subset of allegations related to Baber are sprinkled throughout the pleading. These allegations fail to allege a recognized cause of action for the following reasons:

- The medical services provided at the Sinha Clinic, S.C. ("Sinha") are not "designated health services" as defined by the Stark regulatory framework and, therefore, the referral of these services cannot be a Stark violation;

- Relator/Plaintiff wrongfully conglomerates the alleged liability of Defendants and spuriously asserts that Baber is a proper Defendant with respect Counts One, Two, Three, Four and Five alleged in the Complaint;

- The Complaint fails to allege that the ICFPA sections of the Complaint were submitted to the State's Attorney or the Illinois Attorney General; and

- In sum, the lengthy pleading fails to assert any basis for the claims against Baber.

## II. SUMMARY OF ALLEGATIONS OF THE COMPLAINT

The Sinha Clinic, S.C. (incorrectly sued as Sinha Clinic Corp., hereinafter referred to as the "Sinha Clinic") is a mental health practice which specializes in "EEG neurofeedback and psychotherapy" (Doc. #2, ¶7). The Sinha Clinic is located in St. Charles, Illinois and Shobha Sinha, M.D. ("Dr. Sinha") owns the Sinha Clinic (*Id.*; Doc. #2, ¶8). Baber is a mental health practice which specializes in clinical psychology and psychiatry located in Naperville, Illinois (*Id.*; Doc. #2, ¶10). Dr. Sinha is a part owner of Baber (*Id.*; Doc. #2, ¶11).

Plaintiff worked as an Office Manager for the Sinha Clinic from approximately February 2010 through the date of the filing of the Complaint, August 8, 2012 (Doc. #2, ¶12). Plaintiff also worked as an office manager for the Baber beginning in or about August of 2001 through an unalleged date (*Id.*).

Dr. Sinha referred patients she treated at Baber to the Sinha Clinic and, thereafter, according to the Complaint, the claims for these patients were submitted to Blue Cross Blue Shield ("BCBS"), Medicare and private insurers (Doc. #2, ¶¶54-56).

## III. ARGUMENT

Plaintiff's Complaint is vulnerable to a motion to dismiss because the allegations against Baber fail to state a claim for which relief can be granted pursuant to Rule 12(b)(6). In addition,

Plaintiff's Complaint against Baber fails to allege violations of the FCA and/or violations of the IFCPA with the specificity required by Rule 9(b) (FRCVP 9(b)).

### A. Dr. Sinha did not refer patients from the Baber Clinic to the Sinha Clinic in Violation of Stark

The most glaring and obvious flaw which undermines Plaintiff's Complaint against Baber arises out of the Plaintiff's failure to allege that Dr. Sinha referred patients from Baber to the Sinha Clinic for designated health services ("DHS") payable by Medicare. Assuming, for the moment, that the allegations of the Complaint are true, Dr. Sinha's referral of patients from Baber to the Sinha Clinic for mental health services did not violate the FCA. To the contrary, all of Dr. Sinha's actions in referring patients between Baber located in Naperville and the Sinha Clinic located in St. Charles were legal.

Section 1877 of the Social Security Act (42 U.S.C. § 1395nn), also known as the physician self-referral law and commonly referred to as "Stark," prohibits a physician from making referrals for certain designated health services ("DHS") payable by Medicare to an entity with which he or she (or an immediate family member) has a financial relationship (ownership, investment, or compensation), unless an exception applies.

A referral is defined under Stark (42 C.F.R. § 411.351) as the following:

"Referral--

(1) Means either of the following:

> (i) Except as provided in paragraph (2) of this definition, **the request by a physician for, or ordering of, or the certifying or recertifying of the need for, <u>any designated health service</u> for which payment may be made under Medicare Part B**, including a request for a consultation with another physician and any test or procedure ordered by or to be performed by (or under the supervision of) that other physician, but not including any designated health service personally performed or provided by the referring physician. A designated health service is not personally performed or provided by the referring physician if it is performed or provided by any other person, including, but not limited to, the referring

- 3 -

physician's employees, independent contractors, or group practice members" (emphasis added).

Section 411.351 defines designated health services (DHS) as follows:

"any of the following services (other than those provided as emergency physician services furnished outside of the U.S.), as they are defined in this section:

(1)     (i)     **Clinical laboratory services**.
            (ii)     Physical therapy, occupational therapy, and outpatient speech-language pathology services.
            (iii)     Radiology and certain other imaging services.
            (iv)     Radiation therapy services and supplies.
            (v)     Durable medical equipment and supplies.
            (vi)     Parenteral and enteral nutrients, equipment, and supplies.
            (vii)     Prosthetics, orthotics, and prosthetic devices and supplies.
            (viii)     Home health services.
            (ix)     Outpatient prescription drugs.
            (x)     Inpatient and outpatient hospital services.

(2)     Except as otherwise noted in this subpart, the term "designated health services" or DHS means only DHS payable, in whole or in part, by Medicare. DHS do not include services that are reimbursed by Medicare as part of a composite rate (for example, SNF Part A payments or ASC services identified at § 416.164(a)), except to the extent that services listed in paragraphs (1)(i) through (1)(x) of this definition are themselves payable through a composite rate (for example, all services provided as home health services or inpatient and outpatient hospital services are DHS)" (emphasis added).

The Court's analysis of Plaintiff's claims against Baber could end here. However, to remove any doubt regarding the feeble nature of the Stark allegations of the Complaint, a review of the relevant data on the CMS website confirms that the mental health services offered by the Sinha Clinic do not fall within the definition of clinical laboratory services.

Section 411.351 defines "clinical laboratory services" as follows:

"the biological, microbiological, serological, chemical, immunohematological, hematological, biophysical, cytological, pathological, or other examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, or treatment of any disease or impairment of, or the assessment of the health of, human beings, including procedures to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body, **as specifically identified by the List of CPT/HCPCS Codes**. All services so identified on the List of CPT/HCPCS Codes are clinical

- 4 -

laboratory services for purposes of this subpart. **Any service not specifically identified as a clinical laboratory service on the List of CPT/HCPCS Codes is not a clinical laboratory service for purposes of this subpart**."

The list of CPT/HCPS Codes is available on the CMS website.[1] For the Court's convenience, attached hereto are copies of the lists of CPT/HCPS codes identified on the CMS website, effective January 1, 2012 and January 1, 2015 (<u>Exhibits 1 and 2</u>). The Complaint fails to allege which particular services were provided in violation of Stark. There are various references to CPT codes throughout the Complaint, including CPT codes 90801 (paragraph 64), 90804, 90806, 90808, 90810, 90814 (paragraphs 69, 100), 90901 to 90911 (paragraph 89), 95962, 96961 (paragraph 145), 96118 (paragraph 158). However, none of these codes are included on the list of CPT/HCPS codes, and as such, are also not considered DHS pursuant to Section 411.351.

Plaintiff's allegations against Baber amount to a costly mistake on her part. As discussed in subsequent sections of this Memorandum of Law, Plaintiff has inexplicably alleged that Baber violated both the FCA and the ICFPA based entirely on meritless allegations. The Complaint against Baber should be dismissed with prejudice and Baber should be awarded attorneys' fees and costs associated with the defense of the case.

### B.    Plaintiff was Required to Submit the ICFPA Counts to the State's Attorney or the Illinois Attorney General

Paragraph 2 of the Complaint alleges that the Plaintiff asserts this action on behalf of the State of Illinois (¶2). However, the Complaint does not indicate that the ICFPA counts have been submitted to the State's Attorney or the Illinois Attorney General as required by Section 15 of the ICFPA, which provides, in pertinent part, as follows:

---

[1] Available here: http://www.cms.gov/Medicare/Fraud-and-Abuse/PhysicianSelfReferral/List_of_Codes.html.

> § 15. Action by interested person.
>
> (a) An interested person, including an insurer, may bring a civil action for a violation of this Act for the person and for the State of Illinois. The action shall be brought in the name of the State. The action may be dismissed only if the court and the State's Attorney or the Attorney General, whichever is participating, gives written consent to the dismissal stating their reasons for consenting.
>
> (b) A copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses shall be served on the State's Attorney and Attorney General. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The State's Attorney or Attorney General may elect to intervene and proceed with the action within 60 days after he or she receives both the complaint and the material evidence and information. If more than one governmental entity elects to intervene, the State's Attorney shall have precedence.
>
> 740 ILCS 92/15(a) and (b).

If Plaintiff has failed to submit Counts IV and V of the Complaint to the State's Attorney and the Illinois Attorney General, then the State of Illinois has been deprived of the opportunity to prosecute and/or intervene in the action. If the Plaintiff has followed the correct procedural steps, the State's Attorney or Attorney General must have the opportunity to prosecute the action, remain as a party to the action, or "settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances" (740 ILCS 92/20(b)). The Plaintiff will not possess standing to prosecute this action until after the State's Attorney and/or Attorney General has decided the correct course of action.

The prohibitions of the False Claims Act only encompass bills submitted to Medicare in the healthcare context. If the Plaintiff has not complied with the procedural steps required by the ICFPA, then all allegations associated with billing submitted to private payors should be stricken from the Complaint, and Counts IV and V of the Complaint should be dismissed with prejudice.

2603658\1\23359\56381

  **C. The Complaint Fails to Properly Allege Violation of the False Claims Act**

For at least the last decade, the Seventh Circuit has recognized the plaintiff's burden of compliance with Rule 9(b) of the Federal Rules of Civil Procedure when asserting the *qui tam* provision of the FCA. *U.S. ex rel Gross v. Aids Research Alliance*, 415 F.3d 601 (7th Cir. 2005). In the *Gross* case, the Seventh Circuit described the pleading standard for FCA claims as follows:

> The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir.2003) (Rule 9(b) applies "because the False Claims Act condemns fraud but not negligent errors or omissions.") As is pertinent here, the FCA imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). An FCA claim under § 3729(a)(2) has three essential elements: (1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false. 31 U.S.C. § 3729(a)(2); Lamers, 168 F.3d at 1018.

415 F.3d 601 (7th Cir. 2005).

Plaintiff seeks relief against Baber in all five counts of the Complaint. Count One seeks multiple remedies against "all Defendants" for violation of the FCA. Count Two also seeks relief against all Defendants for violation of the FCA. Without any factual basis described in the previous 170 paragraphs, Plaintiff elected to add Baber to what appears to be a conspiracy count in Count Three. Lastly, Plaintiff seeks relief against Baber in Counts Four and Five of the Complaint for alleged violations of the ICFPA even though the only allegations in the Complaint related to Baber assert that the medical practice somehow participated in a Stark violation. The phantom Stark allegations alleged against Baber in the Complaint could only relate to Medicare billings as opposed to bills submitted to private payors. Accordingly, none of the allegations in the Complaint even implicate the terms of the ICFPA as a viable claim against Baber. This type

2603658\1\23359\56381

of pleading disregards both common sense and the Federal Rules of Civil Procedure. All five counts asserted against Baber should be dismissed with prejudice.

  WHEREFORE, Riaz Baber, M.D., S.C., respectfully requests that the Court grant this Motion, dismissing the action filed by the Relator/Plaintiff with prejudice, while awarding it reasonable attorneys' fees and costs associated with the defense of this case.

DATED: February 20, 2015

              Respectfully Submitted,

              RIAZ BABER, M.D., S.C.


           By:_____s/ David J. Tecson_____
              One of His Attorneys

David J. Tecson (6198108)
Ryan A. Haas (6283020)
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 444-9300