IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *EX REL.* DEBORAH RADKE, AS RELATOR UNDER THE FALSE CLAIMS ACT, | ) ) ) ) | |
| Relator/Plaintiff, | ) ) | Case No. 1:12-cv-06238 |
| v. | ) ) | Honorable Sharon Johnson Coleman |
| SINHA CLINIC CORP., BABER AND ASSOCIATES, LLC, SHOBA SINHA, M.D., and SABRINA YOUNG, PH.D., PSY.D., | ) ) ) ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, Sinha Clinic S.C. ("Sinha Clinic"), incorrectly sued as Sinha Clinic Corp., and Shobha Sinha, M.D. ("Dr. Sinha"), (whenever appropriate, the Sinha Clinic and Dr. Sinha shall be referred to collectively herein as "Sinha"), and Riaz Baber, M.D.S.C. ("Baber Clinic") by and through their attorneys, David J. Tecson and Ryan A. Haas of Chuhak & Tecson, P.C., file this Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and in support hereof, states as follows:

### I. INTRODUCTION

The Court issued a Memorandum Opinion and Order ("Order," Doc. #55) on August 5, 2015 which dismissed the Plaintiff's initial Complaint without prejudice. The Plaintiff's First Amended Complaint ("Amended Complaint," Doc. #62) fails to remedy the flaws identified by the Court, and therefore, the Amended Complaint should also be dismissed. The Amended Complaint fails to satisfy Rule 9(b) of the FRCP for the following reasons:

- The medical services provided at the Sinha Clinic are not "designated health services" as defined by the Stark regulatory framework and, therefore, the referral of these services cannot be a Stark violation;

- The Amended Complaint "lacks a specificity with respect to who did what when as mandated by Rule 9(b)" (Doc. #55);

- The Amended Complaint fails to allege a conspiracy between or among the Defendants to violate the False Claims Act;

- The Amended Complaint utilizes Radke's opinions regarding appropriate billing for psychiatric and psychological treatment in a manner which is misleading to the Court, and fails to satisfy the strict requirements of Rule 9(b); and

- The Amended Complaint fails to allege fraudulent conduct by Sinha with the required level of detail "at an individualized transaction level" (Order, citing *United States ex rel. Dolan v. Long Grove Manor, Inc.,* No. 10 C 368, 2014 U.S. Dist. LEXIS 98429, at *11 (N.D. Ill. July 18, 2014).

## II. SUMMARY OF ALLEGATIONS OF THE COMPLAINT

The Sinha Clinic specialized in "EEG neurofeedback and psychotherapy." (Doc. #62, ¶6). Dr. Sinha is board certified to practice medicine in the field of psychiatry (*Id.*, ¶7), and she held an ownership interest in both the Sinha Clinic and Riaz Baber, M.D.S.C. ("Baber Clinic") (*Id.*, ¶¶ 7-10).

In a manner similar to the original Complaint, the Amended Complaint essentially asserts five different types of psychiatric treatment and billing which allegedly violated the False Claims Act ("FCA"), as follows:

- 3 -

*Illegal Self Referrals Allegedly in Violation of Stark Law and Regulation*

The Amended Complaint mistakenly asserts that Dr. Sinha's referral of patients from the Baber Clinic to the Sinha Clinic for psychiatric or psychological treatment violated the Stark statute and related regulations (Doc. #62, ¶¶ 35-52).

*Two Evaluations of the Same Patient*

The Amended Complaint alleges that it was medically unnecessary for Dr. Sinha (a physician, licensed to prescribe medications) and Sabrina Young, Ph.D. (a psychologist), hereinafter referred to as "Dr. Young," to both conduct evaluations of the same patient (Doc. #62, ¶¶ 53-61).

*Improper Billing of Neurofeedback Procedures at Sinha Clinic*

Radke incorrectly conflates the definition of "biofeedback" procedures (¶ 71) with "neurofeedback" testing provided to Medicare patients (¶ 78). After mistakenly asserting that "biofeedback" procedures are only covered by Medicare in limited instances, Radke asserts that the billing for neurofeedback testing provided to the patients violated the FCA.

*Defendant Physicians Improperly Billed for Psychological Testing*

According to the Amended Complaint, Dr. Young and Dr. Sinha instructed office staff to enter the maximum amount of 9 reimbursable units of testing for CPT code 96118, which is generally described as neuropsychological testing (¶106). CPT code 96118 applies to "neuropsychological testing, per hour of the psychologist's or physician's time, both face-to-face time administering tests to the patients and time interpreting these test results in preparing a report" (¶97). According to Plaintiff, Dr. Young entered notes on certain patient charts indicating that nine units should be billed for "neuropsych battery" for "Medicare only."

*Defendant Physicians Improperly Supervised Interns and Staff*

The Sinha Clinic utilized student interns from the Adler School of Professional Psychology and the Chicago School of Professional Psychology to work in the Sinha Clinic (¶115). Medicare and private insurers will reimburse for (1) psychological testing, (2) therapy, and/or (3) a quantitative electroencephalograph (QEEG) followed by neurofeedback sessions (¶117). Medicare and private insurers will reimburse for the procedures described above conducted by "non-licensed practitioners and interns" so long as they are "under the supervision of a licensed provider." According to the Amended Complaint, the Sinha Clinic improperly billed Medicare and private payors because interns performed procedures on patients without proper supervision from Dr. Young or Dr. Sinha (¶¶120-148).

*Allegedly Improper Testing Performed by Staff Members*

The Amended Complaint also alleges that Sinha Clinic staff members "performed QEEG procedures on patients, conducted the interpretations of these QEEGs, and drafted reports" in a manner which violated the FCA. (¶¶153-161). Finally, the Amended Complaint alleges that Paul Danaan and Dr. Yaeger interpreted test results for Dr. Young, and then provided completed reports to Dr. Young in a manner which violated the FCA. (¶¶167-170).

### III. ARGUMENT

Plaintiff's Complaint is vulnerable to a motion to dismiss because the allegations against Sinha and the Baber Clinic fail to state a claim for which relief can be granted pursuant to Rule 12(b)(6). In addition, Plaintiff's Complaint against Dr. Sinha and the Sinha Clinic fails to allege violations of the FCA with the specificity required by Rule 9(b) (FRCVP 9(b)).

### A. Dr. Sinha did not refer patients from the Baber Clinic to the Sinha Clinic in Violation of Stark

The most glaring flaw which undermines Plaintiff's Complaint against Sinha arises out of the Plaintiff's failure to allege that Dr. Sinha referred patients from Baber Clinic to the Sinha

- 4 -

Clinic for designated health services ("DHS") payable by Medicare. Assuming, for the moment, that the allegations of the Complaint are true, Dr. Sinha's referral of patients from Baber Clinic to the Sinha Clinic for mental health services did not violate the FCA. To the contrary, all of Dr. Sinha's actions in referring patients between Baber Clinic located in Naperville and the Sinha Clinic located in St. Charles were legal.

Section 1877 of the Social Security Act (42 U.S.C. § 1395nn), also known as the physician self-referral law and commonly referred to as "Stark," prohibits a physician from making referrals for certain designated health services ("DHS") payable by Medicare to an entity with which he or she (or an immediate family member) has a financial relationship (ownership, investment, or compensation), unless an exception applies.

A referral is defined under Stark (42 C.F.R. § 411.351) as the following:

"Referral--

(1) Means either of the following:

> (i) Except as provided in paragraph (2) of this definition, **the request by a physician for, or ordering of, or the certifying or recertifying of the need for, <u>any designated health service</u> for which payment may be made under Medicare Part B**, including a request for a consultation with another physician and any test or procedure ordered by or to be performed by (or under the supervision of) that other physician, but not including any designated health service personally performed or provided by the referring physician. A designated health service is not personally performed or provided by the referring physician if it is performed or provided by any other person, including, but not limited to, the referring physician's employees, independent contractors, or group practice members" (emphasis added).

Section 411.351 defines designated health services (DHS) as follows:

"any of the following services (other than those provided as emergency physician services furnished outside of the U.S.), as they are defined in this section:

(1) (i) Clinical laboratory services.
   (ii) Physical therapy, occupational therapy, and outpatient speech-language pathology services.

- 5 -

>  (iii)   Radiology and certain other imaging services.
>  (iv)    Radiation therapy services and supplies.
>  (v)     Durable medical equipment and supplies.
>  (vi)    Parenteral and enteral nutrients, equipment, and supplies.
>  (vii)   Prosthetics, orthotics, and prosthetic devices and supplies.
>  (viii)  Home health services.
>  (ix)    Outpatient prescription drugs.
>  (x)     Inpatient and outpatient hospital services.
>
>  (2)    Except as otherwise noted in this subpart, the term "designated health services" or DHS means only DHS payable, in whole or in part, by Medicare. DHS do not include services that are reimbursed by Medicare as part of a composite rate (for example, SNF Part A payments or ASC services identified at § 416.164(a)), except to the extent that services listed in paragraphs (1)(i) through (1)(x) of this definition are themselves payable through a composite rate (for example, all services provided as home health services or inpatient and outpatient hospital services are DHS)" (emphasis added).

The Amended Complaint fails to allege that Sinha referred patients from the Baber Clinic to the Sinha Clinic for DHS. Instead, the Amended Complaint submits vague allegations such as "Defendant Dr. Sinha regularly violated Stark II by referring to the Clinic patients she saw and/or treated at the separate and distinct Baber clinic" (¶43). The mere referral of patients from one psychiatric clinic to another is not a violation of Stark II. To the contrary, as recited above, only referrals of DHS might potentially violate the Stark statute if the referrals did not fall within certain exemptions.

The Plaintiff relies on exhibits attached to the Amended Complaint which undercut Plaintiff's implied violation of the FCA, because these documents demonstrate that the patients at issue received psychiatric and/or psychological care. For example, and without limitation, the documents attached as **Exhibit 1** confirm that the patient visited the Sinha Clinic for treatment of psychiatric conditions.[1] Aside from **Exhibit 1**, all of the other exhibits confirm that this case relates to psychiatric care and billing provided by Sinha and the other Defendants. None of the

---

[1] Defendants have also filed a Motion to Strike these exhibits from the federal docket. Plaintiff and her counsel should never have filed highly confidential psychiatric records on a public website. Instead, these documents should have been filed under seal with the Court.

- 6 -

psychiatric and/or psychological care provided by the Defendants fits within one of the Stark definitions for DHS, and therefore, this section of the Amended Complaint is completely meritless.

Plaintiff's misunderstanding of the Stark statute is exacerbated by the vague allegations contained in Counts One through Four of the Amended Complaint. Only Count One of the Amended Complaint states that "the Relator seeks relief against all of the Defendants except Baber" (¶173). Count Two of the Amended Complaint "seeks relief against each of the Defendants" (¶178), Count Three alleges that "each of the Defendants conspired with one another to commit violations" of the FCA (¶183) and Count Four "seeks relief [sic] Defendants Dr. Sinha, Baber, and the Clinic" (¶193). The only allegations contained in the Amended Complaint related to the Baber Clinic arise out of the phantom Stark violations. Accordingly, Counts Two, Three and Four of the Amended Complaint should be dismissed with prejudice. There is absolutely no basis for the Plaintiff's repeated attempts to add the Baber Clinic as a Defendant in this case. Without question, the Baber Clinic should be dismissed from this action with prejudice.

**B.     The Complaint Fails to Properly Allege Violation of the False Claims Act**

For at least the last decade, the Seventh Circuit has recognized the plaintiff's burden of compliance with Rule 9(b) of the Federal Rules of Civil Procedure when asserting the *qui tam* provision of the FCA. *U.S. ex rel Gross v. Aids Research Alliance*, 415 F.3d 601 (7th Cir. 2005). In the *Gross* case, the Seventh Circuit described the pleading standard for FCA claims as follows:

> The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir.2003) (Rule 9(b) applies "because the False Claims Act condemns fraud but not negligent errors or omissions.") As is pertinent here, the FCA imposes liability against any person who "knowingly makes, uses, or causes to be made or

- 7 -

used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). An FCA claim under § 3729(a)(2) has three essential elements: (1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false. 31 U.S.C. § 3729(a)(2); Lamers, 168 F.3d at 1018.

*Gross,* 415 F.3d 601 (7th Cir. 2005).

The Amended Complaint contains a variety of allegations which the Plaintiff characterizes as violations of the FCA. These include the provision of two evaluations for the same patient (by Dr. Sinha and Dr. Young), billing for neurofeedback procedures utilizing codes 90804, 90806, 90810 and 90814, improperly billing Medicare for 9 units of neuropsychological testing, and also improperly billing for psychiatric and/or psychological care provided by student interns who were not properly supervised.

FCA plaintiffs are required to satisfy the "who, what, when, where and how" requirement for pleading fraud pursuant to Rule 9(b). *Gross v. Aids Research Alliance*, 415 F.3d at 605; *U.S. ex rel Garst v. Lockheed Martin*, 328 F.3d 374, 376. Paragraph 53 asserts that "Defendant Physicians" engaged in Medicare fraud because both Dr. Sinha and Dr. Young performed evaluations of the same patient. The Plaintiff alleges, without any medical or legal foundation, that evaluations performed by Dr. Sinha and Dr. Young were "worthless and misleading" and also motivated by "the billing and profit motives of Dr. Sinha and Young." (¶55). Plaintiff's opinion is contrary to CMS Guidelines regarding diagnostic interview examinations, which provide as follows: "It may be utilized multiple times in the same patient if a new episode of illness occurs or when reevaluation is required in order to address a new referral question" (CMS Guidelines: 90801). Sound medical practice required Dr. Sinha to provide an evaluation to multiple patients because Dr. Sinha is authorized to prescribe medicine (as an M.D. Psychiatrist) and Dr. Young was not licensed to prescribe medication.

- 8 -

The billing submitted by the Sinha Clinic associated with patient evaluations provided by both Dr. Sinha and Dr. Young was both truthful and accurate. In the unlikely event that Medicare objected to Dr. Sinha providing an evaluation before or after Dr. Young for the purpose of reviewing and analyzing the utilization of prescription medication, certainly Medicare could deny payment for one of the evaluations. In any event, the performance of an evaluation by a psychiatrist during the same time frame of an evaluation by a psychologist does not amount to a violation of the FCA. In fact, the revised CPT codes issues in 2013 draw a distinction between diagnostic evaluation (no medical) with a CPT code of 90791, and a diagnostic evaluation with medical with a CPT code of 90792. (*See*, **Exhibit 1**, 2012-2013 CPT Codes for Psychiatric Services published by the American Academy of Child and Adolescent Psychiatry.

As with other allegations contained in the Complaint, the Plaintiff's assertion that two evaluations of the same patient amount to a violation of the FCA is really nothing more than her uniformed medical necessity opinion. Plaintiff's unfounded opinions cannot form the basis of an FCA action pursuant to Rule 9(b).

Plaintiff mistakenly alleges that "neurofeedback services" ("NF") are synonymous with "biofeedback services" billed under CPT codes 90901 and 90911 (¶89). The neurofeedback sessions offered to patients at the Sinha Clinic have been widely recognized by peer reviewed medical journals as effective treatment for a variety of psychological disorders. Moriyama, T. S., Polanczyk, G., et al. (2012); Evidence-Based Information on the Clinical Use of Neurofeedback for ADHD; *Neurotherapeutics*, 9(3), 588-98; Nan, W., Rodrigues, J., et al. (2012). Individual alpha neurofeedback training effect on short term memory; *International Journal of Psychophysiology*, 86(1), 83-87; Nelson, D., Esty, M. (2012 Neurotherapy of Traumatic Brain Injury/Posttraumatic Stress Symptoms in OEF/OIF Veterans. *Journal of Neuropsychiatry and Clinical Neurosciences*, 24(2), 237- 240; Lofthouse, N., Arnold, L. (2012).

A Review of Neurofeedback Treatment for Pediatric ADHD. *Journal of Attention Disorders*, 16(5), 351-372 (attached hereto as **Exhibit 2**).

Plaintiff insists in the Amended Complaint that NF is not covered by Medicare. (Doc No. 62, ¶78). Thereafter, the Complaint weaves back and forth between referring to "Neurofeedback consultations" and "non-covered biofeedback therapy." (¶80). Without any citation to any authoritative statute, rule, regulation or policy published by Medicare or CMS, Plaintiff declares that billing NF pursuant to CPT codes 90814 and 90810 constituted fraud on the government.

This entire section of the Amended Complaint is deceptive and misleading. As reflected in **Exhibit 1** attached hereto, the chart published by the American Academy of Child and Adolescent Psychiatry demonstrates that Codes 90810, 90812, and 90814 were recognized by Medicare (and other payors) as acceptable codes for "interactive individual psychotherapy". Boiled down to its essence, this aspect of Plaintiff's Amended Complaint amounts nothing more than her opinion that NF does not qualify as "interactive individual pscychotherapy." NF has been a widely recognized and accepted form of interactive individual psychotherapy, and psychologists and psychiatrists nationwide have utilized NF effectively for both the diagnosis and treatment of patients.

In a subsequent section of the Amended Complaint (¶¶93-96), Plaintiff refers to a hodgepodge of Group Exhibits and asserts that these exhibits establish instances "where Dr. Sinha, Young, and Clinic falsely billed for what were supposed to be non-covered services as covered psychotherapy services." Aside from the fact that these allegations are unsupported by the exhibits attached to the Amended Complaint, large sections of these exhibits confirm that these patients were covered by Blue Cross Blue Shield of Illinois ("BCBS"). For example, a large section of Exhibit 10 (Doc. No. 62, pp. 811-821) is a provider claim summary from BCBS.

Exhibit 11 also consists of payor records and a provider claim summary from BCBS. (Doc. No. 62, pp. 827-830). Tellingly, these are the identical exhibits which Plaintiff attempted to utilize to support her claims pursuant to the Illinois Insurance Claims Fraud Prevention Act ("ICFPA"). Plaintiff's claims pursuant to the ICFPA have already been dismissed by the Court. These sections of the Amended Complaint and the related exhibits should be stricken from the record with prejudice.

In another section of the Complaint, Plaintiff alleges that CPT code 96118 applies to "neuropsychological testing, per hour of the psychologist's or physician's time, both face-to-face administering tests to the patient and interpreting these test results and preparing a report." The Complaint also alleges that Medicare covers nine units of testing for this service provided by the physician or psychologist. Thereafter, the Plaintiff alleges that Dr. Young entered notes instructing her to bill Medicare for nine units, which was the maximum amount payable by Medicare. (¶106).

In crafting her Amended Complaint, Plaintiff neglected to address the full definition of CPT code 96118, which allows the psychologist or physician to bill for "both face-to-face time administering tests to the patients and time interpreting these test results and preparing a report." Plaintiff's Amended Complaint in this section is founded on "the maximum units of testing." (¶109). She has no personal knowledge and has made no allegations associated with the amount of time that Dr. Young and/or Dr. Sinha spent "interpreting the test results and preparing a report." There is nothing in the Amended Complaint which indicates that Sinha knowingly submitted a false bill for nine time units associated with the administration of neuropsychological testing, the time spent interpreting test results, and preparing a report in compliance with CPT code 96118.

Paragraphs 115-152 allege in very general terms that Sinha failed to properly supervise student interns seeking their doctoral degree in psychology and also failed to properly supervise Sinha Clinic staff members who performed EEG testing. Plaintiff relies, in part, on Exhibit 22, which is a lengthy set of handwritten notes which Plaintiff asserts as evidence that student interns provided a "treatment" to patients and that "Crystal" (a certified technician) performed EEG testing. (¶¶137-138). The majority of these allegations appear to be focused on Dr. Young rather than Dr. Sinha or the Sinha Clinic. In order to assert liability against the Sinha Clinic and Dr. Sinha arising out of the alleged lack of supervision, Plaintiff cites Exhibit 21 as some form of proof. This email dated May 9, 2012 states that Dr. Young will be out on leave until the end of May and also states "if you have question during that time please call Megan Moller who will be covering for Dr. Young." (Doc #62, Exhibit 21). This is hardly specific proof of false claims submitted to Medicare in violation of the FCA by Dr. Sinha or the Sinha Clinic. Plaintiff also attempts to assert liability against the Sinha Clinic and Dr. Sinha by asserting that Dr. Sinha was "well aware" of the failure to supervise interns. (¶122).

In this respect, the Plaintiff failed to note the Court's admonition that "representative examples of fraudulent conduct must be plead with the requisite level of specificity *at an individualized transaction level.*"" (Doc. #55). *Citing, United States ex rel. Dolan v. Long Grove Manor, Inc.,* 2014 U.S. Dist. LEXIS 94829, at *11 (N.D. Ill. July 18, 2014).

Paragraphs 153-170 contain the same defect. By way of summary, these paragraphs allege that staff members Crystal Norton and Erik Hejnosz performed clinical psychological services and billed for such services "under Dr. Young's NPI number" (¶143). Setting aside, for the moment, whether it would be improper for a staff member to conduct a QEEG test on a patient, which would yield results later interpreted and utilized by Dr. Sinha or Dr. Young, there

- 13 -

is certainly nothing in the Amended Complaint which satisfies the pleading requirements for an FCA case.

Plaintiff also alleges, generally, that Dr. Young did not always interpret her own test results and instead "outsourced" those functions to an intern at the clinic and another psychologist. (¶¶168-169). Once again, in blanket fashion, Plaintiff alleges that bills were issued to Medicare for the services based on the clinic's office practices and instructions from "Dr. Sinha and Young." (Exhibit 171). These conclusory allegations are insufficient to state a claim for violation of the FCA, and the Amended Complaint should be dismissed with prejudice.

WHEREFORE, certain Defendants, Sinha Clinic, S.C. and Shobha Sinha, M.D., respectfully request dismissal of this action with prejudice, and also seek an award of their attorneys' fees and defense costs associated with this case while the Court grants all other relief which is just and equitable.

DATED: November 9, 2015

                Respectfully Submitted,

                SINHA CLINIC, S.C. and SHOBHA SINHA, M.D.

                By:     s/ David J. Tecson
                        One of His Attorneys

David J. Tecson (6198108)
Ryan A. Haas (6283020)
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 444-9300

2799386\2\23359\56381